UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA

Case: 2:21−cr−20094
Assigned To : Michelson, Laurie J.
Referral Judge: Stafford, Elizabeth A.
Assign. Date : 2/10/2021
Description: INFO USA V. SEALED MATTER (NA)

v.

ANGELA HAYES,

VIO: 18 U.S.C. § 371
42 U.S.C. § 1320a-7b

Defendant.

18 U.S.C. § 982

_____/

## INFORMATION

THE ACTING ASSISTANT ATTORNEY GENERAL CHARGES:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

### The Medicare Program

1.      The Medicare program ("Medicare") was a federal health care program providing benefits to persons who were 65 years of age or older or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services.  Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2.      Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

3.      Medicare covered different types of benefits and was separated into different program "parts."   "Part A" of the Medicare program covered certain eligible home health care costs for medical services provided by a home health agency ("HHA"), also referred to as a "provider," to persons who already qualified for Medicare and who additionally required home health services because of an illness or disability that caused them to be homebound.

4.      National Government Services was the CMS intermediary for Medicare Part A in the state of Michigan starting in or around May 2015.  AdvanceMed was the Zone Program Integrity Contractor ("ZPIC"), meaning the Medicare contractor charged with investigating fraud, waste and abuse.

5.      By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement, and furthermore, certified that they would not knowingly present, or cause to be presented, false and fraudulent claims.  In order to receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all of the provisions of the Social Security

Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors.

6.      Upon certification, the medical provider, whether a clinic, a HHA, or an individual, was assigned a provider identification number for Medicare billing purposes (referred to as an "NPI"). When the medical provider rendered a service, the provider submitted a claim for reimbursement to the Medicare contractor or carrier that included the NPI assigned to that medical provider.

7.      In order to receive reimbursement for a covered service from Medicare, a provider was required to submit a claim, either electronically or using a form (e.g., a CMS-1500 form or UB-92) containing the required information appropriately identifying the provider, patient, and services rendered.

8.      Health care providers were given, and provided with online access to, Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations. Providers could only submit claims to Medicare for services they rendered, and providers were required to maintain patient records to verify that the services were provided as described on the claim form. These records were required to be sufficient to permit Medicare, through its contractors, to review the appropriateness of Medicare payments made to the health care provider.

9.      Medicare only covered services that were both medically necessary and rendered.

10.     Medicare only covered home health services, if, on the claimed dates of service:

      a.     the Medicare beneficiary was under the care of a doctor and receiving services under a plan of care established and reviewed regularly by a doctor;

      b.     the Medicare beneficiary needed, and a doctor certified that the beneficiary needed, one or more of the following: (i) Intermittent skilled nursing care; (ii) Physical therapy; (iii) Speech-language pathology services; or (iv) Continued occupational therapy;

      c.     the HHA must have been approved by Medicare (Medicare-certified); and

      d.     the Medicare beneficiary was homebound, and a doctor certified that the Medicare beneficiary was homebound.

**Federal Anti-Kickback Statute Compliance**

11.     As a requirement to enroll as a Medicare provider, Medicare required providers to agree to abide by Medicare laws, regulations, and program instructions. Medicare further required providers to certify that they understood that a payment of a claim by Medicare was conditioned upon the claim and the underlying transaction complying with these laws, regulations, and program instructions,

including the Federal Anti-Kickback Statute.  Accordingly, Medicare would not pay claims procured through kickbacks and bribes.

## The Relevant Home Health Agency

12.    Inij Home Health Care ("Inij") was a Michigan corporation doing business at 3783 Fort Street, Lincoln Park, Michigan 48146.  Inij was enrolled as a participating Medicare provider and submitted claims to Medicare.  Inij was a home health agency that purportedly provided in-home physical therapy, occupational therapy, speech pathology, and skilled nursing services to patients.

## The Defendant

13.    Defendant ANGELA HAYES was a resident of Macomb County, Michigan.  HAYES was a patient recruiter for Inij through her company Best Choice Senior Services.

14.    Farzana Haris, a resident of Wayne County, Michigan, owned and operated Inij.

## Count 1
### Conspiracy to Pay and Receive Health Care Kickbacks
### (18 U.S.C. § 371)

15.    Paragraphs 1 through 14 of the General Allegations section of this Information are re-alleged and incorporated by reference as though fully set forth herein.

5

16.     From at least in or around May 2017, and continuing through in or around June 2019, the exact dates being unknown to the Acting Assistant Attorney General, in Oakland and Wayne Counties, in the Eastern District of Michigan, and elsewhere, ANGELA HAYES, did knowingly and willfully conspire and agree with Haris and others, known and unknown to the Acting Assistant Attorney General, to commit certain offenses against the United States, that is,

    a.  to violate Title 42, United States Code, Section 1320a-7b(b)(1)(A), by soliciting and receiving any remuneration (including any kickback, bribe, and rebate) directly and indirectly, overtly and covertly, in cash and in kind, in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by Medicare, a Federal health care program as defined in Title 18, United States Code, Section 24(b); and

    b.  to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by offering and paying any remuneration (including any kickback, bribe, and rebate) directly and indirectly, overtly and covertly, in cash and in kind in return for referring an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by Medicare, a Federal

6

health care program as defined in Title 18, United States Code, Section 24(b).

## Purpose of the Conspiracy

17.    It was a purpose of the conspiracy for the defendant and her co-conspirators to unjustly enrich themselves by: (1) offering, paying, soliciting, and receiving kickbacks and bribes in return for Medicare beneficiary referrals; and (2) submitting and causing the submission of claims to Medicare for purported home health services provided to those recruited beneficiaries.

## Manner and Means of the Conspiracy

18.    The manner and means by which the defendant and her co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things, the following:

19.    Haris and others paid and caused the payment of illegal kickbacks and bribes to ANGELA HAYES in exchange for referring Medicare beneficiaries and providing Medicare beneficiary information that Haris used to support the submission of claims to Medicare, through Inij, for purported home health care services.

20.    ANGELA HAYES, Harris and others disguised and concealed the kickbacks and bribes to ANGELA HAYES through a sham contract with Inij and false invoices.

21.     Haris wrote checks to ANGELA HAYES' company from a PNC bank account x6447 as compensation for recruiting and referring Medicare beneficiaries to Inij.

## Overt Acts

22.     In furtherance of the conspiracy, and to accomplish its objects and purpose, at least one of the conspirators committed, or caused to be committed, in the Eastern District of Michigan, at least one of the following overt acts, among others:

23.     On or about September 17, 2018, Haris sent ANGELA HAYES a text message about receiving payment for the referral of a Medicare beneficiary to Inij.

24.     On September 17, 2018, Haris paid and caused the payment of approximately $700 to ANGELA HAYES, in the form of check number 3000, drawn on PNC Bank account x6447, held in the name of Inij, made payable to Best Choice Senior Services, in exchange for referring a Medicare beneficiary and providing Medicare beneficiary information.

25.     On or about April 9, 2019, ANGELA HAYES sent Haris a text message about receiving payment for the referral of Medicare beneficiaries to Inij.

26.     On April 9, 2019, Haris paid and caused the payment of approximately $1,400 to ANGELA HAYES, in the form of check number 3241, drawn on PNC Bank account x6447, held in the name of Inij, made payable to Best Choice Senior

Services, in exchange for referring Medicare beneficiaries and providing Medicare beneficiaries' information.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE ALLEGATIONS

### (18 U.S.C. § 982(a)(7) - Criminal Forfeiture)

27.     The allegations contained in this Information are incorporated by reference as if set forth fully herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 982.

28.     As a result of the violations alleged in Count 1 as set forth in this Information, Defendant ANGELA HAYES shall forfeit to the United States pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

29.     Money Judgment:  Such property includes, but is not limited to, a forfeiture money judgment against HAYES in an amount to be determined, representing the total value of all property subject to forfeiture as a result of her violation of Title 18, United States Code, Sections 371 and Title 42 United States Code, Section1320a, as alleged in Count 1 of this Information.

30.     Substitute Assets:  If the property described above as being subject to forfeiture, as a result of any act or omission of the Defendant:

9

a.      Cannot be located upon the exercise of due diligence;

b.      Has been transferred or sold to, or deposited with, a third party;

c.      Has been placed beyond the jurisdiction of the Court;

d.      Has been substantially diminished in value; or

e.      Has been commingled with other property that cannot be subdivided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section

853(p) as incorporated by Title 18, United States Code, Section 982(b), to seek to

forfeit any other property of Defendant ANGELA HAYES up to the value of the

forfeitable property described above.


NICHOLAS L. MCQUAID
Acting Assistant Attorney General
Criminal Division
U.S. Department of Justice


s/DANIEL KAHN
DANIEL KAHN
Acting Chief
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W., Eighth Floor
Washington, D.C. 20005


s/JOHN J. MCCORMACK
JOHN J. MCCORMACK
Trial Attorney
Criminal Division, Fraud Section

U.S. Department of Justice
1400 New York Avenue, N.W., Eighth Floor
Washington, D.C. 20005
 (202) 262-7011
John.mccormack.iv@usdoj.gov

Date:  February 10, 2021

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>21-20094 |
|---|---|---|

**NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.**

| Companion Case Information | Companion Case Number: 18-cr-20437 |
|---|---|
| This may be a companion case based upon **LCrR 57.10 (b)(4)**[1]: | Judge Assigned:  Hon. Sean F. Cox |
| ☒ Yes          ☒ No | AUSA's Initials: |

**Case Title:** USA v.  ANGELA HAYES

**County where offense occurred :**  Wayne County, Oakland County

**Check One:**     ☒ **Felony**               ☐ **Misdemeanor**                 ☐ **Petty**

_____Indictment/__✓__Information --- **no** prior complaint.

_____Indictment/_____Information --- based upon prior complaint [**Case number:**                    ]

_____Indictment/_____Information --- based upon **LCrR 57.10 (d)** *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** _____     **Judge:** _____

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☐ Embraces same subject matter but adds the additional defendants or charges below:

| **Defendant name** | **Charges** | **Prior Complaint (if applicable)** |
|---|---|---|

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

February 10, 2021
_____
Date

s/John J. McCormack
_____

John J. McCormack, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: 202-262-7011
Fax:    (313) 226-0816
E-Mail address: John.McCormack.IV@usdoj.gov
Attorney Bar #:  MA 676073, NH 19569

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.